Hugo Darwin EKSTRAND, Petitioner,

v.

STATE of Oklahoma, and The Department of Corrections, Respondents.

No. H–89–1275.

Court of Criminal Appeals of Oklahoma.

April 4, 1990.

ORDER

On December 12, 1989, the petitioner, Hugo Darwin Ekstrand, filed an application for this Court to assume jurisdiction and issue a writ of habeas corpus in Tulsa County District Court Case No. CRF–87–728. Petitioner has alleged that 57 O.S. Supp.1988, § 138 is an *ex post facto* law as applied to him in that it computes earned time credits in such a way as to allow him fewer credits than he was given under the previous statute, thereby lengthening his sentence. On December 20, 1989, this Court directed a response from the Respondents. On January 29, 1990, the Respondents filed their response.

The saga concerning this Court's holding as to 57 O.S.Supp.1988, § 138 began on June 20, 1989, when this Court granted post-conviction relief in *Mahler v. State*, 776 P.2d 565 (Okl.Cr.1989), finding that 57 O.S.Supp.1988, § 224 was an *ex post facto* law as applied to prisoners whose crimes were committed prior to the effective date of the November 1, 1988, amendment. Relying on *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), this Court found that the new statute constricted a prisoner's opportunity to earn early release, and thereby made more onerous the punishment for crimes committed before its enactment. We held that prisoners whose crimes were committed prior to the effective date of the amendment were entitled to the benefits of § 224 as it existed prior to the amendment. *Mahler*, 776 P.2d at 566. We did not hold that prisoners were entitled to earn credits under both statutes, but rather, that prisoners whose crimes were committed prior to the amendment were entitled to receive the credits under the law as it existed at the time they had committed their crime, plus any new opportunities to earn additional credit not available under the prior law.

On October 10, 1989, we entered an order withdrawing the June 20th order, holding that we had exceeded our criminal jurisdiction, and finding that proper jurisdiction lay in the Oklahoma Supreme Court. *Mahler v. State*, 781 P.2d 835 (Okl.Cr.1989).

Finally, on December 5, 1989, we issued a final order disposing of the original proceeding that was still pending in this Court. *Mahler v. State*, 783 P.2d 973 (Okl.Cr. 1989). We explained that a complaint concerning earned time credits is not properly brought under the Post–Conviction Procedure Act, 22 O.S.1981, § 1080 *et seq.*, because such a complaint does not involve an attack upon the prisoner's underlying conviction or imposition of sentence. We concluded that the only method by which this Court could obtain jurisdiction over a complaint concerning earned time credits was if the matter was brought as a writ of Habeas Corpus and even then, only if a petitioner could claim entitlement to immediate release. *Id.*

In the meantime, the State of Oklahoma filed an application for a writ of prohibition in the Oklahoma Supreme Court, arguing that this Court had exceeded its jurisdiction

in its original *Mahler* ruling. The Oklahoma Supreme Court recently held that jurisdiction over questions pertaining to the length of sentences and credit time for reduction of those sentences belonged in this Court. *The State of Oklahoma, et al., v. The Court of Criminal Appeals of the State of Oklahoma,* 61 O.B.A.J. 145, 148 (Okla. January 16, 1990). We, therefore, turn to the petition presently before this Court.

■■■ Petitioner Ekstrand claims that the amendment to § 138 is unconstitutional as an *ex post facto* law when applied to him, because his crime was committed before the statute's amendment. Two elements must be present for a criminal or penal law to be *ex post facto:* (1) it must be retrospective, that is, it must apply to events occurring before its enactment, and (2) it must disadvantage the offender affected by it. *Lindsey v. Washington,* 301 U.S. 397, 401, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937). Furthermore, a law need not impair a "vested right" to violate the *ex post facto* prohibition. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense. *Weaver v. Graham,* 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981). We now consider the Oklahoma statute in light of these two considerations.

■■ The initial inquiry is whether 57 O.S.Supp.1988, § 138 applies to prisoners convicted for acts committed before the amendment's effective date. Title 57 O.S. Supp.1988, § 138(H) provides that as of the effective date of the act, November 1, 1988, *all* inmates currently under the custody of the Department of Corrections shall receive their assignments and all credits from that date forward shall be calculated pursuant to this act. Therefore, it is a retrospective law which can be applied to petitioner only if it is not to his detriment. *Dobbert v. Florida,* 432 U.S. 282, 294, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977).

■■ Whether a retrospective state criminal statute ameliorates or worsens conditions imposed by its predecessor is a federal question. *Weaver v. Graham, supra,* 450 U.S., at 33, 101 S.Ct., at 966. Under the second inquiry, we must determine whether the amendment makes more onerous the punishment for crimes committed before its enactment.

Title 57 O.S.1981, § 224, provided in pertinent part,

> Each inmate who works for the state, county or municipality under this section shall be provided *three (3)* credit days, to be taken off his sentenced time, for *each* earned day of service.

Also, under 57 O.S.1981, § 138, every inmate who engaged in work, attended school or participated in a vocational training program, had one (1) day deducted from his sentence for *each* day that he engaged in such activity. In addition to the earned credits, an inmate was entitled to a deduction of twenty (20) days for *each* pint of blood donated to the American Red Cross or any approved agency or hospital. However, no inmate could receive blood credit for more than four donations in any twelve-month period. Thus an inmate could earn up to eighty (80) days of blood credit per twelve-month period.

Under the 1988 amendment, § 224 now provides in pertinent part,

> Each inmate who works for the state, county or municipality under this section shall be provided credit, to be taken off his sentenced time, for each earned day of service, pursuant to the provisions of Section 138 of this title.

Under 57 O.S.Supp.1988, § 138, every inmate of a state correctional institution shall have their term of imprisonment reduced monthly, based upon the class level to which they are assigned. Prisoners are divided into four (4) classes, based essentially on the length of their incarceration. The *maximum* monthly credits any prisoner can now receive is forty-four (44). In addition, four (4) requirements to earn the credits have now been established for the classes. *See* 57 O.S.Supp.1988, § 138(C)(3). Achievement earned credits are also awarded based on educational achievement and

completion of programs such as the Alcohol/Chemical Abuse Treatment Program. However, no inmate can receive more than ninety (90) achievement credits per calendar year and no credit is given for blood donations. *See* 57 O.S.Supp.1988, § 138(F).

■ Sentences and any reduction credits thereon are dictated by the Legislature. However, after a comparison of the statutes, before and after the amendment, it is obvious that 57 O.S.Supp.1988, §§ 138 and 224 are disadvantageous to petitioner and other similarly situated prisoners. On its face, the amended statute adds requirements and reduces the number of monthly earned credits available to an inmate who abides by prison rules and adequately performs his or her assigned tasks. By definition, this reduction lengthens the period that someone in petitioner's position must spend in prison. Thus, the amended statute constricts an inmate's opportunity to earn early release, and thereby makes more onerous the punishment for crimes committed before its enactment. This result simply runs afoul of the prohibition against *ex post facto* laws. *See Weaver v. Graham, supra,* 450 U.S. at 36, 101 S.Ct. at 968. *See also, Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) and *Raske v. Martinez,* 876 F.2d 1496 (11th Cir.1989). Therefore, we hold that petitioner, and other similarly situated inmates who are disadvantaged by the amended statute, shall be entitled to the credits allotted under the statute effective on the date their crime was committed.

■ As we held in *Mahler v. State,* 783 P.2d 973 (Okl.Cr.1989), the proper procedure for petitioner and similarly situated inmates to follow is to file a petition for Writ of Habeas Corpus in the district court of the county where he or she is being restrained. *In re Dykes,* 13 Okl. 339, 74 P. 506, 507 (1903). However, before any such writ can be granted, a petitioner must demonstrate that under the statute in effect on the date his or her crime was committed, he or she would have earned enough credits to be entitled to IMMEDIATE release. *See In re Salisbury,* 363 P.2d 380, 381 (Okl.Cr. 1961).

The petitioner has not shown that he is entitled to immediate release and the bare statements by petitioner are not sufficient evidence for this Court to grant petitioner his requested writ of habeas corpus and, therefore, such writ should be denied. Petitioner herein should petition the District Court having proper jurisdiction for a new writ of habeas corpus to request immediate release and/or an evidentiary hearing to determine whether or not the petitioner would be entitled to immediate release pursuant to the terms of this order. All other parties that would also be entitled to immediate release under the terms of this order may likewise apply to a court of competent jurisdiction. The evidentiary hearing required to make such determination are properly to be held in the appropriate District Court. Therefore, the petition for the writ of habeas corpus should be, and hereby is, DENIED.

IT IS SO ORDERED.

/s/ James F. Lane
James F. Lane,
Vice Presiding Judge
/s/ Tom Brett
Tom Brett,
Judge
/s/ Gary L. Lumpkin
Gary L. Lumpkin,
Judge, concur in part
Dissent in part
/s/ Charles A. Johnson
Charles A. Johnson,
Judge

LUMPKIN, Judge, concurring in part/dissenting in part.

I agree that if the statutory enactments violate the prohibition against *ex post facto* laws the Petitioner is "entitled to the credits allotted under the statute effective on the date [his] crime was committed". However, it does not appear certain that the revisions of 57 O.S.Supp, § 138 and § 224 are the same type of changes in the granting of credits to prisoners as the U.S. Supreme Court sought to address in *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); nor that the revisions violate the *ex post facto* criteria set forth in *Miller v. Florida,* 482 U.S. 423, 107 S.Ct.

2446, 96 L.Ed.2d 351 (1987), *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), or *Lindsey v. Washington*, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937).

The Court states that the determination of "[w]hether a retrospective state criminal statute ameliorates or worsens conditions imposed by its predecessors is a federal question" citing *Weaver v. Graham* as authority. However, Article 2, Section 15, of the Oklahoma Constitution also provides "[n]o bill of attainder, ex post facto law, ... shall ever be passed".

I must dissent to the Court's determination that the Oklahoma "earned credit" system of providing inmates with the *opportunity* to earn additional time reductions from their sentences if they qualify for the program is the same type of system addressed in *Weaver*. In fact, *Weaver* has previously been applied to the Oklahoma statutes when the Legislature changed the system from an automatic "good time" credit system to an "earned credit" system which requires inmates to earn credits which will reduce their sentence. *See Spradling v. Maynard*, 527 F.Supp. 398 (W.D.Okl.1981). In the present case we are asked to address a change in the statutes which continues the "earned credit" system but changes the manner in which an inmate qualifies for the program and the number of credits which can be earned. This is where the distinction between the Oklahoma statutes and the system discussed in *Weaver* must be addressed.

In *Weaver* the U.S. Supreme Court was presented with a system in Florida where inmates were given a certain number of "gain time for good conduct" credits on a monthly basis. These credits were given to each inmate merely for following the rules. Oklahoma, as the Court in *Spradling* recognized, prior to 1976 had this same type of system. Since 1976 the Legislature has provided an "earned credit" system which allows each inmate who qualifies and completes the work or other prerequisites to then *receive the credits earned.* Prior to performing the acts required the inmate only has an expectation that the credit can

be earned. The process is two-fold: First, the inmate must be admitted to the program set forth in the statute, and second, the work or act must be completed to qualify for the credits. When an inmate enters the corrections system he or she merely has an opportunity or expectation to be able to qualify and earn the credits. It is not the same type of system which was in place prior to 1976 in Oklahoma or which was addressed in *Weaver*. In *Weaver*, inmates were guaranteed certain monthly credits by statute at the time they entered the system if they followed the rules. It was not merely an opportunity to earn credits by future acts.

It is interesting that in *Weaver* the U.S. Supreme Court extended *ex post facto* prohibitions beyond substantive criminal law applications. In *Portley v. Grossman*, 444 U.S. 1311, 100 S.Ct. 714, 62 L.Ed.2d 723 (1980), Mr. Justice Rehnquist quoted from *Dobbert* the holding that "this Court held that the prohibition of *ex post facto* laws does not extend to every change of law that 'may work to the disadvantage of a defendant.' It is intended to secure 'substantial personal rights' from retroactive deprivation and does not 'limit the legislative control of remedies and modes of procedure which do not affect matters of substance.' *Ibid.*" *Id.* 100 S.Ct. at 715. In applying these standards to federal parole guidelines and denying the application of *ex post facto* to those guidelines he then stated "[t]he terms of the sentence originally imposed have in no way been altered. Applicant cannot be held in confinement beyond the term imposed by the judge, and at the time of his sentence he knew that parole violations would put him at risk of serving the balance of his sentence in federal custody. The guidelines, therefore, neither deprive applicant of any pre-existing right nor enhance the punishment imposed." *Id.* 100 S.Ct. at 715. I submit that the perameters established in *Calder v. Bull*, 3 U.S. (Dall.) 386, 390, 1 L.Ed. 648 (1798), for the application of *ex post facto* prohibitions have been exceeded in *Weaver*. However, even in the application of stare decisis the Court should ensure the systems of credit being analyzed are of the

same type to which the prohibition has been applied.

I must also disagree with the Court's conclusion that the amended statutes are disadvantageous to the Petitioner. If the Petitioner is disadvantaged it will be due to the Petitioners inaction in taking advantage of the opportunities provided to earn credits to reduce his sentence. Just as Petitioner, prior to the amendment, was required to earn the credits, the current statutes still allows him that opportunity. The opportunity to earn has not been changed. Since 1976 inmates in the custody of the Department of Corrections have merely been provided the opportunity to earn credits, those credits have not been guaranteed to the inmates at the time of their sentence. This opportunity to earn credits does not create a constitutionally protected liberty interest under either Article 1, § 10, cl. 1 of the U.S. Constitution or Article 2, § 15, of the Oklahoma Constitution. Under each statute notice is given prior to the performance of the acts which give right to claim the credits earned. The right to the credit does not accrue until the acts are performed.

While I concur in the denial of the writ, I do not agree with the analysis of our statutory provisions.