34 F.3d 1076
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Lee Scott TURNHAM, Petitioner,
v.
Michael W. CARR, Attorney General of the State of Oklahoma,
Respondent.
 No. 94-5014.
 United States Court of Appeals, Tenth Circuit.
 Aug. 5, 1994.
 
 Before TACHA, BRORBY, and EBEL, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Lee Scott Turnham was convicted in Oklahoma state court of two counts of first degree manslaughter and was sentenced to 15 years of imprisonment. Mr. Turnham filed a petition for a writ of habeas corpus in federal court pursuant to 28 U.S.C. 2254. On December 22, 1993, the District Court for the Northern District of Oklahoma issued an order denying the writ. This pro se appeal followed.
 
 
 3
 Petitioner raises four arguments on appeal: (1) that the application of Oklahoma's earned-time credit law by the Oklahoma Department of Corrections (DOC) is ex post facto with respect to prisoners who committed their offense of conviction prior to November 1, 1988; (2) that Petitioner is entitled to time credits earned under both the amended and preamended versions of the statute; (3) that the DOC's allocation of jobs under the preamended version of the statute violated the Equal Protection Clause of the Fourteenth Amendment; and (4) that Appellee violated this court's rules by failing to append unpublished decisions cited in its brief.
 
 I. BACKGROUND
 
 4
 Effective November 1, 1988, the State of Oklahoma substantially amended its inmate earned-time credit statute. Under the preamended version of the law, each prisoner received credits according to the job or activity to which he was assigned. Some jobs earned inmates three credit days for each day worked; others rewarded prisoners one-for-one. The statute also awarded inmates 20 credit days for each pint of blood that they donated, up to a maximum of 80 credit days per year.
 
 
 5
 The amended statute significantly altered this system. Each inmate now earns credits according to his time spent in one of four classifications. For instance, an inmate earns 44 credits for spending a month in Class 4, whereas he earns no credits for time spent in Class 1. Okla. Stat. Ann. tit. 57, 138(D)(2) (West Supp.1994). Inmates are assigned to a specific class level based on a variety of factors, including "rehabilitation, obtaining job skills and educational enhancement, participation in and completion of alcohol/chemical abuse programs, ... work attendance and productivity, conduct record, participation in programs, cooperative general behavior, and appearance." Id. 138(B). The amendments also eliminated the opportunity for inmates to earn credits by donating blood.
 
 
 6
 In Ekstrand v. State, 791 P.2d 92 (Okla.Crim.App.1990), the Oklahoma Court of Criminal Appeals held that application of the amended statute to inmates convicted prior to November 1, 1988, "runs afoul of the prohibition of ex post facto laws." Id. at 95. The same court clarified its Ekstrand holding in State ex rel. Maynard v. Page, 798 P.2d 628 (Okla.Crim.App.1990), where it stated that an inmate in Oklahoma was "entitled only to credits which were allowed under the law on the date the crime giving rise to his conviction was committed." Id. at 629.
 
 
 7
 After Ekstrand and Page, the DOC revised its system of awarding credits to permit inmates who committed their offense of conviction before November 1, 1988, to petition the Department for credits earned under the preamended version of the statute. The DOC, however, would not apply such credits to an inmate's sentence until 30 days before his discharge. Moreover, the DOC required the inmates themselves to keep track of the credits they earned under the old law.
 
 
 8
 In Scales v. Brewer, Unpub. Op., Case Nos. CIV-90-369-S and CIV-90-375-S (E.D. Okla., Apr. 7, 1993), the District Court for the Eastern District of Oklahoma adopted the findings of a federal magistrate judge who ruled that the DOC's new procedure for awarding time credits was also unconstitutional. The magistrate ruled that the DOC's application of the statute was ex post facto as applied to inmates who committed their offense of conviction before November 1, 1988, because it put such prisoners "at risk of continued confinement beyond their discharge date." Id. at 5.
 
 
 9
 Following Scales, the DOC again revamped its system of awarding time credits. The DOC now tabulates for each inmate how many credits he has earned under each version of the statute on a monthly basis and automatically awards the inmate the greater of the two totals.
 
 II. DISCUSSION
 
 10
 Petitioner first contends that the DOC's latest procedure for applying Oklahoma's earned-time credit statute still violates the Constitution's prohibition of ex post facto laws. A fundamental element of a cognizable ex post facto claim is that the application of the law somehow disadvantages the claimant. In other words, the challenged law must impose a greater punishment on Petitioner than was prescribed when he committed his offense. Devine v. New Mexico Dep't of Corrections, 866 F.2d 339, 341 (10th Cir.1989). The DOC's application of sections 138 and 124, however, has not enhanced Petitioner's punishment from what it would have been had the law never been amended. If anything, by gaining the opportunity to earn more credits in those months where the new system is more favorable to him than the old, Petitioner has benefitted from the amendments. Petitioner therefore has no ex post facto claim.
 
 
 11
 Petitioner next contends that, because the amended and preamended versions of the statute are qualitatively dissimilar, he is entitled to the cumulative total of credits he would earn under both versions of the statute. Petitioner relies specifically on language in Scales, where the magistrate stated that "attempting to compare the pre-November 1, 1988, statute with the class level credit earned under the current statute and give each inmate the benefit of the most advantageous statute on a monthly basis" was both "an impossible task" and "contrary to the holding of Ekstrand." Scales, at 5-6.
 
 
 12
 Even assuming that the DOC should not compare credits earned under each version of the statute, Petitioner is not entitled to credits earned under both statutes. Whether inmates are entitled to earn credits under both systems simultaneously is a matter of state law. And, as the magistrate stated in Scales, the Oklahoma Court of Criminal Appeals has clearly held that "inmates are entitled only to the credits allotted under the statute effective on the date their crime was committed." Scales, at 9; see also Page, 798 P.2d at 629. Petitioner therefore is not entitled to credits earned simultaneously under both versions of the law.
 
 
 13
 We next turn to Petitioner's equal protection claim. Petitioner does not claim that he has been treated differently because of any suspect classification. Thus, to pass constitutional muster, the assignment of jobs to inmates under section 224 need only be reasonably related to some legitimate penological purpose. Templeman v. Gunter, 16 F.3d 367, 371 (10th Cir.1994).
 
 
 14
 Section 224 states that "[a]n inmate of a state correctional facility may be assigned to a state agency other than the Department of Corrections or to a county or municipal jail for service and maintenance work for the state, county or municipality." Okla. Stat. Ann. tit. 57, 224 (West Supp.1994) (emphasis added). The statute therefore commits the assignment of such jobs wholly to the discretion of prison officials. And in making such assignments, prison administrators invariably consider a variety of factors, which may include public safety, the security of inmates and prison staff, or the proximity of a job to an inmate's place of incarceration. Simply put, Petitioner's claim that there were no differences between himself and other inmates that might have been reasonably related to his assignment is implausible. Templeman, 16 F.3d at 371. In light of the deference this court must afford prison officials in executing such discretionary judgment, see Hewitt v. Helms, 459 U.S. 460, 472 (1983), Petitioner's equal protection claim cannot stand.
 
 
 15
 Finally, Petitioner complains that Appellee failed to append several unpublished orders and judgments cited in its brief. The rules of this court permit the citation of an unpublished order and judgment where it
 
 
 16
 has persuasive value with respect to a material issue in a case and would assist the court in its disposition ... provided that a copy of the decision is attached to the brief or other document in which it is cited, or, if cited in oral argument, is provided to the court and all other parties.
 
 
 17
 151 F.R.D. 470 (emphasis added). Appellee's failure to append four unpublished decisions cited in its brief clearly violated this rule. After careful review of these decisions, however, we find that Petitioner's exposure to the decisions would not have affected the disposition of this case. Appellee's violations therefore were not prejudicial. We nevertheless admonish Appellee to append all such decisions to its briefs in the future; it is hardly fair to cite decisions to which the opposing party has no practical access.
 
 
 18
 For these reasons, the decision of the district court is AFFIRMED. The mandate shall issue forthwith.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470