## OPINION OF THE JUDGES.
## In re BEN GOULD.

No. A-11104. Sept. 15, 1948.
(197 P. 2d 629.)

298

Honorable Roy J. Turner

Governor of the State of Oklahoma

Sir:

The Judges of the Criminal Court of Appeals, in response to your official communication of recent date addressed to this Court requesting an opinion as provided by Tit. 22 O. S. 1941 § 1003, which presents for the consideration of the Judges of the Court an authenticated copy of the record of the conviction of Ben Gould, for the crime of murder, and who was on the 15th day of March, 1948, by the judgment of the District Court of Atoka County, Honorable Sam Sullivan, Judge, sentenced to suffer death by electrocution on May 28, 1948, within the walls of the State Penitentiary at McAlester, as by law provided, which execution has been stayed by you until September 27, 1948, in order to grant to the defendant time in which to perfect an appeal to this Court if he so desires, we hereby respectfully submit the following opinion of the Judges:

JONES, J.   It appears from the record submitted that on the 6th day of February, 1948, a preliminary information was filed in the county court of Atoka county, charging Ben Gould with the murder of one Mary Lynn in said county on the 5th day of February, 1948, which said information alleged in substance that the murder

was accomplished by making an assault upon the said Mary Lynn with a certain metal ice pick, which was used to stab the said Mary Lynn, and that said defendant did also choke, strangle and beat said Mary Lynn with his hands and fists, thereby inflicting mortal wounds, of which mortal wounds so inflicted the said Mary Lynn did on the 5th day of February, 1948, die as was intended by the said Ben Gould she should do.

It also appears from the record that a preliminary examination was held before the county court of Atoka county on February 16, 1948, at which hearing the defendant appeared in person and by his attorney, Joe Ralls. The testimony of many witnesses was taken at the preliminary examination, a transcript of which evidence is included in the record furnished to us in this proceeding. At the conclusion of the state's evidence, the defendant through his attorney announced he had no testimony to offer. The county court thereupon entered an order holding the defendant for trial in the district court of Atoka county and remanding him to the custody of the sheriff of Atoka county, to be held without bond until disposition of the case by the district court.

On February 19, 1948, an information in substantially the same language as that set forth in the preliminary information was filed in the district court of Atoka county, charging the said Ben Gould with murder as aforesaid. On the 9th day of March, 1948, pursuant to an order of the district court, the defendant was arraigned before the district court of Atoka county; at his arraignment, the defendant was present in person and by his attorney, Joe Ralls, who had been duly appointed to represent the defendant, by the district court of Atoka county. The information was read at length to the defendant by the county attorney. Immediately after

the information was read to the defendant he was fully advised by the district court of his constitutional and statutory rights, after which the court inquired as to whether the defendant was ready at that time to enter his plea to the information, to which defendant's counsel responded:

"Mr. Joe Ralls: At this time I want to make a statement. I have seen the defendant on several different occasions and advised the defendant of his constitutional rights. And he has at all times said he wanted to plead guilty.

"At this time he doesn't have to say, but it remains with himself finally as to his own interest here, which he enters. And he had done this of his own free will. And he wanted me to advise him, and I refused to advise him, but informed him that he would be the one, and the only one to enter a plea of guilty.

"The Court: The court will take judicial notice of the fact that he is the only one that can enter a plea of guilty.

"The Court: At this time you have been advised of your constitutional rights, and you know and understand you have the right to have a trial by a jury of twelve men.

"The Defendant (Ben Gould): I am guilty.

"The Court: Let the record show that the defendant was arraigned in open court, and after being advised of his constitutional rights, and after his counsel advised him of his constitutional rights, and that he was also advised in open court; and that thereupon he entered his plea of guilty to the murder of Mary Lynn on February 5th, 1948."

The court thereupon entered an order setting March 15, 1948, at 10:00 a. m., as the time for pronouncing sentence upon the plea of guilty entered by the defendant.

The record discloses that on March 15, 1948, at 10:00 a. m., the defendant being again present and with his counsel, the court proceeded to hear the testimony of witnesses introduced by the county attorney to show the circumstances surrounding the commission of the alleged crime by the defendant. These witnesses were all examined in open court by the county attorney, and some of them were cross-examined by counsel for the defendant. The privilege of cross-examination of the other witnesses was waived by the attorney for the defendant.

This evidence disclosed that Miss Mary Lynn, who was about 57 years of age, was employed as a clerk at a feed store on the outskirts of the city of Atoka on February 5, 1948. This lady lived with her married sister and her family in the east part of the city of Atoka. It was the habit of the deceased to close the feed store and return to her home in a taxicab about 6:00 p. m. each day. She did not return home by 8:00 p. m. and her sister with whom she lived became alarmed because she was unable to reach her by telephone, and she started an investigation to learn her whereabouts. Mr. Pitts, owner of the store, unlocked the store building and the body of deceased was discovered lying in the rear of the store. As to her appearance at that time, the Doctor, who was immediately called, testified:

"A. She was lying in the north west corner of the building; the head to the north, feet to the west, both limbs were outstretched. The lower part of the body was bare from the waist down. She had a mark of choking on the throat. Two upper teeth were broken loose; four lower teeth were broken loose. She had a fractured lower jaw. Her upper lip was cut for about three-quarters of an inch on the left side. On her right chest she had been stabbed 45 times with a pointed instrument. The stabs were all in an area of approximately eight

inches across. Two of these piercing wounds could have caused death. Two could have cut the ascending large blood vessel,—carotid, aorta,—that is just above the clavicle where it joins the sternum, called the suprasternum.

"Q. Was there anything to show her sexual organs had been violated? A. Yes, sir."

An investigation by the officers was immediately commenced and it was learned that the defendant had been seen in the vicinity of the store between 5 and 6 o'clock p. m. He had talked to a boy who testified that the defendant had inquired of him as to who was now running the old feed store.

After a preliminary investigation lasting about an hour, the sheriff, accompanied by other officers, went to the home of the defendant. The defendant after first surrendering to the officers, attempted to flee and was only stopped after two shots were fired. After the defendant had been removed to the county jail, he confessed to having committed the crime and accompanied the sheriff and other officers to the west side of his house where he raised a big rock under the edge of the house and showed them a billfold and a key to a Yale lock which he had taken from the deceased. The billfold contained $119.90 in money. The key was to the padlock on the door of the feed store. After hearing the confession of the defendant, the sheriff wrote out the statements made by the defendant and the statement which was signed by the defendant reads as follows:

"(State's Exhibit 'A')

"F. B. Wheeler          Walter Kyle          J. O. Stewart
"Undersheriff          Field Deputy          Jailer
"L. O. McBride, Sheriff of Atoka County, Atoka, Oklahoma
"St Ex 'A'

"February 5—1948
"Statement of Ben Gould

"My name is Ben Gould I am 40 Years Old I Live Here In Atoka Oklahoma. I am Making This Statement

304

to Sheriff McBride Freely and Voluntarily Without Threat or Fear And After Being Warned By L. O. McBride Sheriff of Atoka Co Oklahoma That Any Statement I May Make May Be Used Against Me and Not For Me In Court. In The Murder of Miss Mary Lynn Who was Murdered Feb-5. 1948 About Six O'Clock P. M. Same Date.

"I Ben Gould Went To The Store Where Miss Mary Lynn Was working Around Six-P.M. February 1948 Same Date As Above I ask For a Package of Camels She got Me the Cigarettes I Payed Her 21 Cts For Them And Then Said Give Me That Money You Got. She Then Went To Running Back To The Stove I run Back Where She Was About the Center Of the Building Where There Was A Stove And Caught Her And I Hit Her With My Right Fist and Knocked Her Over Into Some Shelves On The South Side Of The Building She Then Got Up and Run To the Back Of The Store And I Then Ran Back There And Caught Her Again.—And Knocked Her Down Again.

"I Ben Gould Then Got Down On My Knees Beside Miss Mary Lynn And Stabbed Her Several Times With An Ice Pick Which I had Picked Up There In the Store Which Was Lying On The Desk Up At the Front Of The Store I Stabbed Her in The Breast.

"I then Pulled Her Just A Little South By The Feet And Then Covered Her Body Up With Some Feed Sacks I had Torn Her Dress and Her Panties Off and Burned Them In The Stove and I Also Looked Through Her Purse.

"I Then Taken The Purse And Put It In The Stove And Burned It The Sheriff Of Atoka Co Oklahoma Has Some Bobby Pins and A Small Mirror And a Pair of Tweezers Which Was Taken Out of The Stove By Dr. P. G. Howes. Which Was In the Purse When I Put Them In the Stove and Burned Them.

"I then Went Out The Front Door Of The Store and Locked The Doors Behind Me and Threw The Ice Pick Over In The Weeds I Then Went On Home And

Went Around On The West Side of My House And Put The Purse And The Money And The Key To the Lock That Opened The Lock On the Front Door Which I Had just Locked When I Left.

"I Went On Home And Went To Bed After I had Hidden The Billfold With The Money And The Front Door Key That Had Taken From The Cash Drawer Where Miss Mary Lynn Was Working Out On Highway 69 In The South Part Of Atoka Co Okla. In The Old Maxey Store Bldg—I had Been In Bed About Thirty Minutes When The Officers Came To My House Mr. Walter Kyle and Harvey Hawkins Was The Officers Who Came. To My House.

"Mr. Kyle Was In The House Talking to My Wife and Mr. Harvey Hawkins and Myself Ben Gould Walked Out Side And I Attempted to Run And Mr. Hawkins Shot At Me Twice And I Then Stopped And Come Back.

"The Officers Brought Me On To Jail And After Talking To The Sheriff And the Other Officers I Then Went Back To My House With Sheriff McBride Dr. P. G. Howes W. H. Baley and Hallie Stanfill and Taken Them To the Billfold And The Money Which I had Hidden Under My House Behind A Large Rock. On The West Side. Of House.

"I Pulled The Rock Back And Picked Up The Billfold And the Money And Gave It To Sheriff McBride.

"Dr. P. G. Howes and Mr. Baley and Hallie Stanfill And Myself Was Present At The Time I pulled the Money From Under the House.

"I have Made This Statement With My Own Free Will And Accord And Every Word Is True and Correct.

"Signed     Ben Gould
"Witnesses
 "T. A. Curtis
 "Claud Collier
 "F. Jacobus
 "J. F. Henson
 "Hallie Stanfill"

After the defendant had related in his confession that he had burned a part of the clothes of the deceased in the stove at the store, the stove was searched by the sheriff and the doctor, and a lady's compact, a mirror, lipstick, nail file, small pincers, and bobby pins were all removed from the stove. The defendant at the time of his arrest had some blood on his clothes and the knuckles on his hands were skinned. The evidence disclosed that the woman was attacked at the front of the store and that she had fought the defendant for several minutes before being overcome. In addition to killing the deceased, the defendant was guilty of ravishing her.

At the conclusion of the hearing, the trial court before sentence was pronounced, twice inquired of the defendant as to whether he wished to allow his plea of guilty to stand, to which inquiry the defendant each time said, Yes sir, and reiterated that he was guilty of the murder of Mary Lynn. The court thereupon pronounced the sentence of death by electrocution in accordance with the laws of Oklahoma.

Our Code of Criminal Procedure provides:

"The judge of a court at which a conviction requiring a judgment of death is had, must, immediately after the conviction, transmit to the Governor, by mail or otherwise, a statement of the conviction and judgment, and of the testimony given at the trial." 22 O. S. 1941 § 1002.

"The governor may thereupon require the opinion of the judges of the criminal court of appeals, or any of them, upon the statement so furnished." 22 O. S. 1941 § 1003.

This court has held that the statutes above quoted contemplate that an advisory opinion of the Judges of the Criminal Court of Appeals may be given to the Gov-

ernor when an appeal has not been taken in a capital case from a judgment and sentence of death. The sole proposition then presented would be: Has there been an observance of all the formalities of law essential to the taking of human life, and has the trial, conviction and sentence of death been in accordance with the law of the land? Opinion of the Judges, 3 Okla. Cr. 315, 105 P. 684; Opinion of the Judges, 18 Okla. Cr. 20, 192 P. 597; Opinion of the Judges, 70 Okla. Cr. 83, 104 P. 2d 726.

The Penal Code of Oklahoma provides:

"Every person convicted of murder shall suffer death, or imprisonment at hard labor in the State Penitentiary for life, at the discretion of the jury. Upon trial of an indictment for murder, the jury, if they find the defendant guilty, must designate in their verdict whether he shall be punished by death or imprisonment for life at hard labor, and the judgment of the court shall be in accordance therewith. But upon a plea of guilty the court shall determine the same." 21 O. S. 1941 § 707.

The first question presented for our consideration is whether, according to a proper judicial construction, the concluding clause of the above section authorizes the district court to pronounce and enter a judgment of death upon a defendant's plea of guilty, or whether, on the contrary, it is necessary under the statute to submit the question whether he shall be punished by death or imprisonment for life at hard labor to the discretion of a jury.

There is no reason why this provision of the Penal Code is not constitutional and valid. A conviction of crime may be had in three ways: Either by the verdict of a jury, or by findings of fact, by the judge where a jury is waived, sec. 20, art. VII, Const., or by a plea of

guilty. Where a defendant who is indicted or informed against for a capital crime in a court of competent jurisdiction pleads guilty, the court is authorized to pronounce judgment and sentence against such defendant according to law. The authority thus granted is not in any degree affected or controlled by the previous provisions contained in said § 707, supra, that:

"Every person convicted of murder shall suffer death, or imprisonment at hard labor in the State Penitentiary for life, at the discretion of the jury."

And that:

"Upon trial of an indictment for murder the jury, if they find the defendant guilty, must designate in their verdict whether he shall be punished by death or imprisonment for life at hard labor, and the judgment of the court shall be in accordance therewith."

The foregoing provisions apply only to cases where there is a trial upon an indictment or information for murder on a general plea of not guilty.

It is evident that the foregoing provisions of our Penal Code were not designed to abrogate the well-established rule of the common law, by which a party indicted for an offense, however grave in nature, may enter a plea of guilty thereto, if he sees fit so to do. In such cases there is no issue to be submitted to a jury on which a verdict can be founded. All that the court is required to do is to render judgment and sentence imposing punishment as prescribed by law for the crime committed. Opinion of the Judges, 6 Okla. Cr. 18, 115 P. 1028; Opinion of the Judges, 18 Okla. Cr. 20, 192 P. 597.

The Bill of Rights provides that:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial

jury of the county in which the crime shall have been committed: * * * He shall have the right to be heard by himself and counsel; and in capital cases, at least two days before the case is called for trial, he shall be furnished with a list of the witnesses that will be called in chief, to prove the allegations of the indictment or information, together with their post office addresses." Okla. St. Ann. Const. art. 2, § 20.

The record affirmatively shows that the defendant has been afforded all of the rights guaranteed to him by the statutes and Constitution of Oklahoma, and that he voluntarily entered a plea of guilty to the charge of murder as set forth in the information. No motion for a new trial or an arrest of judgment was interposed on behalf of defendant and the time within which an appeal could be filed in this court has expired and no appeal has been taken.

Where it appears from the record, as in this case, that a defendant has been fully advised as to his constitutional and statutory rights, and as to the consequences of his plea, and that with such knowledge and after the appointment of counsel who advised with defendant, he deliberately enters a plea of guilty, the trial court is justified in accepting it, even in a capital case.

From a careful examination and consideration of the record transmitted by you, our advisory opinion is that the necessary legal steps and proceedings were taken in this case essential to the taking of human life under a charge of murder; that the defendant was accorded the benefit of all constitutional and statutory rights not specifically waived by him; and that his conviction and sentence of death has been in accordance with the law of the land.

BAREFOOT, P. J., and BRETT, J., concur.