Wes Hardin **CANADY, Petitioner,**

v.

Dan **REYNOLDS, Respondent.**

Jerry **McMANUS, Petitioner,**

v.

Michael **CARR, Respondent.**

Nos. O–94–308, O–94–309.

Court of Criminal Appeals of Oklahoma.

Aug. 24, 1994.

---

*OPINION ANSWERING CERTIFIED*
*QUESTION OF LAW*

LUMPKIN, Presiding Judge:

Frank H. Seay, District Judge for the United States District Court for the Eastern District of Oklahoma, has certified a Question of Law pursuant to the Oklahoma Uniform Certification of Questions of Law Act, 20 O.S.1991, §§ 1601-1611, as follows:

"Is there a state mandamus remedy whereby inmates may challenge the administration of their sentences and allege the unconstitutional denial of earned credits they are entitled to receive; and if not, what is the proper state remedy for inmates to challenge the administration of their sentences (included earned and CAP credits), assuming they are not entitled to an immediate release?"

■ We are not asked to determine whether Petitioners are entitled to relief. The only issue before us is what procedures are available in State courts for those in Petitioners' situation. We hold relief is available in State courts, but not in the format sought by Petitioners. Specifically, we hold: (1) Mandamus provides a vehicle for inmates to ensure due process is provided within the Department of Corrections disciplinary system; (2) state law does not provide an appeal from Department of Corrections actions on discipline; (3) habeas corpus is the plenary remedy for an inmate to adjudicate a right to release based on the amount of time served coupled with the net earned credits awarded; and (4) consequently, a state remedy is afforded, but not at the time the Petitioners seek to prematurely litigate the issue.

## I. FACTS

The following relevant facts are from the order of the federal court certifying this question of law.

Petitioners filed an application for a writ of habeas corpus pursuant to applicable federal law. Both make a number of allegations in their petitions concerning sentence credits they believe they are entitled to receive. Petitioner Canady alleges he had 251 days of credit that were rescinded without adequate explanation or process; he is entitled to 233 days of level two non-promotional credits; and he is entitled to approximately 154 days of credit pursuant to *Ekstrand v. State,* 791 P.2d 92 (Okl.Cr.1990). Petitioner McManus also alleges he is entitled to relief as a result of *Ekstrand.* He also alleges ex post facto violations and other grounds for relief.

The federal district court entered an order discussing *Waldon v. Evans,* 861 P.2d 311 (Okl.Cr.1993), and requesting the parties to address whether *Waldon* created a state mandamus remedy for Petitioners' claims. While Petitioners objected to the certification, Respondents recommended it, believing it would be in the best interest of all involved.

The federal district court questioned whether there was a controlling precedent giving Petitioners and others in like situations an adequate state remedy. If such a remedy now exists, Petitioners' actions in federal court may be dismissed, as they have failed to exhaust all state remedies. If we determined no adequate state remedy existed, the federal court would proceed on the claims.

## II. SCOPE OF CERTIFIED QUESTION OF LAW ACT

■ This is the first question certified to this Court under the Uniform Certification of Questions of Law Act, codified at 20 O.S. 1991, §§ 1601-1611. Before we address the question at hand, we must determine the scope of the act. In so doing, we have examined both cases from our own state Supreme Court and cases from other jurisdictions.

The statute giving this Court the power to answer such a question is found at 20 O.S. 1991, § 1602. It reads:

The Supreme Court and the Court of Criminal Appeals respectively may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a United States District Court, the United States Court of International Trade, the Judicial Panel on Multidistrict Litigation, the United States Claims Court, the United States Court of Military Appeals, the United

States Tax Court, or the highest appellate court or the intermediate appellate court of any other state, when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court or Court of Criminal Appeals of this state.

The initial question before us is whether this Act gives this Court the power to create new law in the form of answering questions of first impression which may create a precedent; or whether it merely tells the certifying court the state of the law as it currently exists, without creating a precedent. As the discussion below indicates, we find this Court has the power to use the certified question as a vehicle to decide issues which may create a precedent.

### A.

■ We begin with the observation this Court cannot otherwise issue advisory opinions. *See Matter of L.N.,* 617 P.2d 239, 240 (Okl.Cr.1980) ("unless we are vested with original jurisdiction, all exercise of power must be derived from our appellate jurisdiction, which is the power and the jurisdiction to review and correct those proceedings of inferior courts brought for determination in the manner provided by law.... An advisory opinion does not fall within the Court's original or statutory jurisdiction; neither does it come within its appellate review. To offer advice in the form of an opinion would be to interfere with the responsibility of the trial court to exercise the powers confided to it. We will not do so absent constitutional or statutory authority."); *Barnett v. Brett,* 401 P.2d 532, 534 (Okl.Cr.1965) ("It is the solemn responsibility of trial judges to make rulings on questions of law arising before them, and the writ of prohibition cannot be invoked, to secure from the Court of Criminal Appeals an advisory opinion, on matters which are addressed to the discretion of the trial judges, and for which they must assume the responsibility."). Advisory opinions are allowed if a statute permits it. *Compare with*

*Opinion of the Judges,* 87 Okl.Cr. 297, 306–07, 197 P.2d 629, 634 (Okl.Cr.1948) (citing 22 O.S. §§ 1002, 1003, Court observes it has statutory authority to issue advisory opinions to the governor in cases in which the death sentence has been imposed and an appeal has not been taken.).

From this, it seems clear that absent statutory authority, this Court could not issue an opinion in any matter not at issue before it. This statutory authority is found in 20 O.S. §§ 1601–1611. In other words, it is this Act which gives this Court jurisdiction to consider the issue before it.

### B.

Having determined *why* we can consider this certified question, we now turn to *what* we can consider. Owing to the absence of precedent from this Court, we look to cases decided by our state Supreme Court.

■ Without question, we can address questions of first impression. *See Safeco Ins. Co. of America v. Sanders,* 803 P.2d 688, 689–90 (Okl.1990) (noting question issue of first impression; turning to court's own decisions and decisions from other states to formulate answer); *Culbertson v. McCann,* 664 P.2d 388 (Okl.1983); *Uptegraft v. Home Ins. Co.,* 662 P.2d 681, 683 (Okl.1983) ("Certified to us under the Uniform Certification of Questions of Law Act, 20 O.S.1981 Sec. 1601 et seq., are the following first-impression questions:"). However, this is possible only if the question is properly before the Court under the Act. *See Atlantic Richfield Co. v. Tomlinson,* 859 P.2d 1088, 1093, 1096 (Okl. 1993) (using ground of not answering hypothetical questions, court feels "constrained to address the federal court's certified questions only insofar as they apply to the litigants of this action"; declining to answer all questions because some were rendered moot); *Avemco Ins. Co. v. White,* 841 P.2d 588, 590 (Okl.1992) (defining scope of its decision to include only "questions of law *certified to it* ..." (Emphasis in opinion); declining to deal with whether another state's law should be applied, as issue is beyond the scope of the federal court's certified question.); *Underwriters at Lloyd's of London v. North*

*American Van Line,* 829 P.2d 978, 979 (Okl. 1992) (limiting question to that presented by the certifying court; looking to other cases that have considered the "prevailing party" question); *Sexton v. Continental Cas. Co.,* 816 P.2d 1135, 1136 (Okl.1991) ("Twice before we have noted the existence of the question, but in neither case was it properly before us, and, as is our practice, we declined to address it hypothetically.").

Sometimes it becomes necessary to "re-interpret" the question to adequately answer it. *See Tate v. Browning–Ferris, Inc.,* 833 P.2d 1218, 1220 (Okl.1992) (In order to give a complete answer, court addresses "a question expressly tendered in the parties' briefs and fairly comprised in the plaintiff's federal-court complaint allegations, although not explicitly posed"); *Beard v. Viene,* 826 P.2d 990, 998 n. 4 (Okl.1992) (noting that "under the generally prevailing rule this court possesses the necessary power to reformulate ambiguously phrased certified questions of law. [citations] By narrowly construing the certified question's ambiguously phrased language, we avoid the necessity of reformulation."); *Shebester v. Triple Crown Insurers,* 826 P.2d 603, 605–06, 612 n. 2 (Okl.1992) ("We also answer another question which we view as fairly comprised within that which is posed, though perhaps not explicitly propounded to us"). *But see Id.* at 612 (Simms, J., concurring in part, dissenting in part) ("I concur in the portion of the majority opinion answering the question certified by the federal court. I dissent, however, from the majority's decision to address unasked questions of contractual liabilities and remedies.")

It appears the Oklahoma Supreme Court is not reluctant to use the Act to make new law which may create a new precedent. *See Buzzard v. Farmers Ins. Co., Inc.,* 824 P.2d 1105, 113 (Okl.1991) (citing case involving certified question of law under 20 O.S. § 1602 for authority in resolving conflict *sub judice* ). Likewise, the courts of appeals have used Supreme Court cases originally published to answer certified questions of law to resolve issues before them. *See Alldredge v. Oklahoma Firefighters Pension and Retirement Board,* 816 P.2d 580, 582 (Okl.App. 1991); *Maxwell v. Independent School Dist.,* 672 P.2d 1179, 1181 (Okl.App.1983); *Smith v. Broken Arrow Public Schools,* 665 P.2d 858 (Okl.App.1983).

Therefore, we have the authority not only to give the present state of the law, but also to use the opportunity to create new precedents. This is only logical: it does not make sense to say we have jurisdiction to consider a matter, yet not have the power to use the result of that as a new precedent.

### C.

This same philosophy was expressed differently by at least two other states.

The Supreme Judicial Court of Maine in *In re Richards,* 223 A.2d 827 (Me.1966), interpreted its statute giving it authority to answer a certified question of law. Noting the general prohibition against advisory opinions, the court noted it had authority to do so under its statute; and that such authority was a proper use of its judicial power, as it would "terminate the controversy and remove the uncertainty which now exists" concerning that particular question before it. *Id.* at 830.[1]

The Court concluded, as have we, that "[t]he certification by the federal court becomes by the force of our statute the jurisdictional vehicle for placing the matter before the court for its action.... The certification will make it apparent that there is a genuine live controversy between the parties pending in the federal court, a controversy based upon an existing factual situation which will be determined by our response to questions." *Id.* at 832.

*See also Smith v. Gray Concrete Pipe Co.,* 267 Md. 149, 297 A.2d 721, 725, 728 (1972) (holding Maryland's version of the Uniform

---

1. Parenthetically, the court addressed the concept of creating new precedents in addressing a certified question. In discussing its concept of judicial power, it noted that "[w]here an actual controversy exists between parties, it is submitted in formal proceedings to a court, the decision of the court is binding upon the parties and their privies and is res judicata of the issue in any other proceeding in court in which it may be involved," adding "what else can the decision be but the exercise of judicial power?" *Id.* at 830.

Certification of Questions of Law Act permitted the court to answer tort question certified by federal court, even though their jurisdiction would otherwise be limited to cases in which certiorari had been granted; also seeing "in the present case the occasion for such further interpretation" of previous case touching on subject *sub judice*).

From this, we conclude the statute gives this Court jurisdiction, both to interpret the law for the federal court and to use that law as a valid precedent in our own jurisprudence.

Having determined the scope of Act, we now turn to the substantive problem presented.

## III. HISTORY

The federal court is well entitled to be confused about the state of Oklahoma law in the area of earned credits. Rulings by courts in this State on the subject are not a hallmark of consistency.

A complete recitation of that history is unnecessary here. Suffice it to say that before *Waldon*, this Court had held the only remedy available by extraordinary writ was that of habeas corpus, which a prisoner could use if he were entitled to earned credits, and which would entitle him to immediate release.

However, in *Waldon*, this Court held an inmate could use the writ of mandamus to force prison officials to provide him with minimum procedural due process to challenge the revocation of credits after they have previously been earned, regardless of whether he would be entitled to immediate release if the credits were restored. *Id.* at 313.

*Waldon* is correct in that it holds there must be some remedy available to inmates who are being deprived of the process due

them to seek restoration of previously earned credits which have been revoked. To hold otherwise would be to hold the courts of this State are powerless to correct violations of procedural due process once those violations are found. However, *Waldon* did not hold that, once the process due an inmate was given, mandamus was the proper remedy to challenge that process. *See Id.*, 861 P.2d at 313 ("This Court finds that a writ of mandamus must lie against appropriate prison officials when a prisoner's minimum due process rights have been violated. The District Court's action is a due process review only, and not an appellate review of the decision of the disciplinary authority."). *See also Id.* at 314 (Lumpkin, P.J., specially concurring). The following discussion indicates why an extraordinary writ is not an appropriate vehicle under state law to appeal from a ruling determining restoration of lost credits.

## IV. SCOPE OF MANDAMUS

Mandamus is not a writ to be taken lightly. By its very nature, mandamus is an extraordinary writ, which will not issue unless a petitioner can show (1) a clear legal right; (2) the respondent's refusal to perform a plain legal duty not involving the exercise of discretion; and (3) the adequacy of mandamus and the inadequacy of other relief. *Woolen v. Coffman*, 676 P.2d 1375, 1377 (Okl. Cr.1984) (citing *Draper v. State*, 621 P.2d 1142, 1147 (Okl.1980)). *See also* 22 O.S.1991, Ch. 18, App., *Rules of the Court of Criminal Appeals*, Rule 10.6(B).

The fact an inmate is *eligible* for the number of earned credits provided by law at the time his crime was committed has already been established by this Court.[2] *See Ekstrand; Weaver v. Graham*, 450 U.S. 24, 36–37, 101 S.Ct. 960, 968–69, 67 L.Ed.2d 17 (1981) (Blackmun, J., Concurring in the Judgment[3]); *see also* discussion and cases

---

**2.** I continue to believe this Court erred in its determination the Oklahoma "earned credit" system of providing inmates with the *opportunity* to earn additional time reductions from their sentences if they qualify for the program is the same type of system addressed in *Weaver. See Ekstrand v. State,* 791 P.2d 92, 95 (Okl.Cr.1990) (LUMPKIN, J., concurring in part/dissenting in

part). However, I am bound by *stare decisis* on this point.

**3.** "Were the Court writing on a clean slate, I would vote to affirm the judgment of the Supreme Court of Florida. My thesis would be: (a) the 1978 Florida statute operates only prospectively and does not affect petitioner's credits earned and accumulated prior to the effective

cited in *Waldon; Mitchell v. Meachum*, 770 P.2d 887, 890 (Okl.1988), and cases cited therein. Therefore, the first requirement for mandamus is satisfied.

 The second, however, is not. Prison officials have a duty to guarantee an inmate receives the process which is due him when previously earned credits have been revoked and have a duty to administer earned credits as directed by the Legislature. *See* 57 O.S.Supp.1993, § 138(E) (aggrieved inmate may use "normal grievance procedures" within the Department of Corrections and the facility in which he is incarcerated). This is the only issue addressed in *Waldon.* However, the actual granting or revoking of credits must of necessity involve some discretion; *e.g.,* determining how many and what type of infractions result in a change of status which could affect the number of credits earned. *See* 57 O.S.Supp.1993, § 138 (allowing credits to be subtracted from credits previously earned upon recommendation of a prison's disciplinary committee; requiring due process protections; subject to approval of the warden or superintendent of the institution; and ordering adjustment review committee to consider all aspects of policy and procedures developed by the Department of Corrections, "including but not limited to" criteria set forth in statute).

Typically, an inmate's complaint is not that prison officials have not acted (in which case mandamus is appropriate), but that they have acted in a manner with which the inmate disagrees. Under those circumstances, mandamus is inappropriate.[4] *See Lyles v. Page*, 442 P.2d 542, 543 (Okl.Cr.1968) (Use of a time calculation chart by the prison authorities not provided for in the statutes, or the constitution of the State of Oklahoma, and, therefore, no rights have accrued to this petitioner under it; the calculation chart was established by the prison authorities for their convenience); *Galcatcher v. Page*, 437 P.2d 284, 286 (Okl.Cr.1968) (relief sought by petitioner was matter concerning the internal administration of the state penitentiary, and must be taken up with the proper authorities of the Department of Corrections).

As the above discussion shows, mandamus is not appropriate. Whether there is another remedy is a separate question.

## V. AUTHORITY FOR APPEAL

We begin with the observation there is no constitutional right to an appeal within any State system. *Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d

---

date of the statute; (b) "good time" or "gain time" is something to be earned and is not part of, or inherent in, the sentence imposed; (c) all the new statute did was to remove some of petitioner's hope and a portion of his opportunity; and (d) his sentence therefore was not enhanced by the statute. In addition, [referring to the majority opinion], the statutory change by no means was entirely restrictive; in certain respects it was more lenient, as the Court's careful preservation for this prisoner of the new statute's other provisions clearly implies. [citation]

"The Court's precedents, however, particularly *Lindsey v. Washington*, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937), and the summary disposition of *Greenfield v. Scafati*, 277 F.Supp. 644 (Mass.1967), aff'd, 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968), although not warmly persuasive for me, look the other way, and I thus must accede to the judgment of the Court."

**4.** Since some discretion is used to determine how earned credits are given or removed, to hold mandamus is the proper remedy would be tantamount to telling prison officials who are doing something wrong to "do it right" without further instruction. That is rather like telling a three-year-old child with no training to go out and ride a bicycle. We recognize other courts in this State have held mandamus can be used to correct abuses of discretion. *See Draper v. State*, 621 P.2d 1142, 1146 (Okl.1980) (Mandamus will lie to compel the Attorney General to exercise his discretion, but it does not lie to control his action regarding matters within his discretion, unless his discretion has been clearly abused.); *Dale v. City of Yukon*, 618 P.2d 954, 957 (Okl.App.1980) (If act is discretionary, the movant must allege an arbitrary, capricious, or unreasonable action done under the guise of the exercise of discretion by the respondent that amounts to an abuse of discretion). However, we will not presume every case before us involves prison officials who are deliberately abusing their discretion in determining how credits are given or taken away. To hold mandamus is the proper remedy in every case is to do precisely that very thing. Additionally, this Court has set forth three requirements which must be satisfied before Mandamus is appropriate. *See* 22 O.S.1991, Ch. 18, App. *Rules of the Court of Criminal Appeals*, Rule 10.6(B). These requirements do not include abuse of discretion.

651 (1977); ("The right of appeal, as we presently know it in criminal cases, is purely a creature of statute; in order to exercise that statutory right of appeal one must come within the terms of the applicable statute in this case."); *Estelle v. Dorrough,* 420 U.S. 534, 536–37, 95 S.Ct. 1173, 1175, 43 L.Ed.2d 377 (1975); *Ross v. Moffitt,* 417 U.S. 600, 610–11, 94 S.Ct. 2437, 2443–44, 41 L.Ed.2d 341 (1974).

We have consistently held appeals to this Court are governed by statutes; and while the statutes may give a defendant the right to appeal, the manner of taking that appeal is subject to legislative control. *Rodrick v. State,* 412 P.2d 965, 966 (Okl.Cr.1966); *Gresham v. Page,* 411 P.2d 251, 254 (Okl.Cr.1966); *Beatty v. State,* 387 P.2d 145, 146 (Okl.Cr.

1963); *Mayo v. State,* 96 Okl.Cr. 143, 144, 250 P.2d 228 (1952). Therefore, we turn to the statutes to determine if they create a right of appeal from an administrative proceeding dealing with earned credits.

## A.

We find no right of appeal in the Administrative Procedures Act (hereinafter referred to as APA), 75 O.S.1991, §§ 250–323. The Department of Corrections is subject to the APA in certain aspects, *see Lindsey v. State ex rel. Dept. of Corrections,* 593 P.2d 1088, 1089 (Okl.1979) (citing Act for authority to review administrative action demoting employee of the Department of Corrections; citing 75 O.S.1971 §§ 318[5] & 322[6]

---

5. That section currently reads:

Sec. 318. Judicial review

A.1. Any party aggrieved by a final agency order in an individual proceeding is entitled to certain, speedy, adequate and complete judicial review thereof pursuant to the provisions of this section and Sections 319, 320, 321, 322 and 323 of this title.

2. This section shall not prevent resort to other means of review, redress, relief or trial de novo, available because of constitutional provisions.

3. Neither a motion for new trial nor an application for rehearing shall be prerequisite to secure judicial review.

B.1. The judicial review prescribed by this section for final agency orders, as to agencies whose final agency orders are made subject to review, under constitutional or statutory provisions, by appellate proceedings in the Supreme Court of Oklahoma, shall be afforded by such proceedings taken in accordance with the procedure and under the conditions otherwise provided by law, but subject to the applicable provisions of Sections 319 through 324 of this title, and the rules of the Supreme Court.

2. In all other instances, proceedings for review shall be instituted by filing a petition, in the district court of the county in which the party seeking review resides or at the option of such party where the property interest affected is situated, within thirty (30) days after the appellant is notified of the final agency order as provided in Section 312 of this title.

C. Copies of the petition shall be served upon the agency and all other parties of record, and proof of such service shall be filed in the court within ten (10) days after the filing of the petition. The court, in its discretion, may permit other interested persons to intervene.

D. In any proceedings for review brought by a party aggrieved by a final agency order:

1. The agency whose final agency order was made subject to review may be entitled to

recover against such aggrieved party any court costs, witness fees and reasonable attorney fees if the court determines that the proceeding brought by the party is frivolous or was brought to delay the effect of said final agency order.

2. The party aggrieved by the final agency order may be entitled to recover against such agency any court costs, witness fees, and reasonable attorney fees if the court determines that the proceeding brought by the agency is frivolous.

6. That statute at the time read:

"(1) In any proceeding for the review of an agency order, the Supreme Court or the District or Superior Court, as the case may be, in the exercise of proper judicial discretion or authority, may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:

(a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, as defined in Section 10 of this Act, including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact; or

(f) arbitrary or capricious; or

(g) because findings of fact, upon issues essential to the decision were not made although requested.

as authority.); yet we cannot ignore the provisions of 75 O.S.Supp.1993, § 250.4. Generally, the APA mandates certain procedures must be followed to afford due process and provides for judicial appeals from administrative proceedings. However, Section 250.4 creates exceptions to that requirement. It reads in pertinent part:

> B. As specified, the following agencies or classes of agency activities are not required to comply with the provisions of Article II of the Administrative Procedures Act [the section of the Act relating to agency notice and hearing requirements for individual proceedings]:
>
> . . . .
>
> 8. *The supervisory or administrative agency of any penal, mental, medical or eleemosynary institution, only with respect to the institutional supervision, custody, control, care or treatment of inmates, prisoners or patients therein;* provided, that the provisions of Article II shall apply to and govern all administrative actions of the Oklahoma Alcohol Prevention, Training, Treatment and Rehabilitation Authority.

(emphasis added). Therefore, we find the Administrative Procedures Act does not provide for judicial review of an administrative decision by the Department of Corrections to grant or revoke earned credits.

### B.

▪ Nor do we find a statutorily created right of appeal within the earned credit statute itself. That statute, found at 57 O.S.Supp.1993, § 138, directs earned credits to be administered to inmates, and requires the Department of Corrections to develop a policy and procedure assigning inmates to one of four class levels. The policy and procedure shall include certain guidelines set forth in the statute; however, it is not limited to those enumerated guidelines. The inmate receives credits corresponding to his particular class level, and can earn additional credits upon completion of certain programs.

Of particular relevance to the question before us is Subsection 138(E). This subsection dictates adjustment review committees must review and evaluate an inmate's class level status at least once every four months. This subsection also provides the following, which was added in 1988:

> Any inmate who feels aggrieved by a decision made by an adjustment review committee may utilize normal grievance procedures in effect with the Department of Corrections and in effect at the facility in which the inmate is incarcerated.

*Id.* While specifically providing for this grievance procedure through the prison system, the statute is noticeably lacking in any other procedure by which an inmate can challenge the administration of his credits. A classic rule of statutory construction is "expressio unius est exclusio alterius": the mention of one thing in a statute implies exclusion of another. *McCullick v. State,* 682 P.2d 235, 236 (Okl.Cr.1984); *State v. Cline,* 322 P.2d 208, 213 (Okl.Cr.1958).

We must therefore conclude the Legislature meant to limit the availability of remedies to a procedure within the prison system to the exclusion of a judicial remedy, when such remedy would not entitle the inmate to immediate release.

We recognize at least three other jurisdictions have interpreted its post-conviction relief act to include the type of remedy the Petitioners here seek. *See Davis v. State,* 345 N.W.2d 97 (Iowa 1984); *see also Stacey v. State,* 30 Or.App. 1075, 569 P.2d 640, 643 (1977); *Tutt v. State,* 277 S.C. 525, 290 S.E.2d 414, 415 (1982). However, we are not aware of any statutory provision in those states which specifically provides for a remedy within the Department of Corrections itself.

Section 138 of Title 57 remained unchanged for 42 years since its passage in

(2) The reviewing court, also in the exercise of proper judicial discretion or authority, may remand the case to the agency for the taking and consideration of further evidence, if it is deemed essential to a proper disposition of the issue.

(3) The reviewing court shall affirm the order and decision of the agency, if it is found to be valid and the proceedings are free from prejudicial error to the appellant."

1915. However, since 1957, the Legislature has modified and changed it on an average of once every four years; it has changed four times in the past decade. *See* Laws 1993, c. 125, § 5; Laws 1989, c. 237, § 6; Laws 1988, c. 122, § 1; Laws 1984, c. 137, § 1; Laws 1976, c. 219 § 1; Laws 1973, c. 200 § 1; Laws 1970, c. 8 § 1; Laws 1968, c. 255, § 1; Laws 1961, p. 438, § 1; Laws 1957, p. 459, § 1; Laws 1915, c. 57 § 12. We point this out not to criticize, but to show the Legislature has had ample opportunity to provide for judicial relief. Instead, it chose to specifically provide for administrative relief within the Department of Corrections. We are bound by that legislative dictate.

We realize that by this ruling we are holding an inmate does not have a right to an interlocutory determination of the status of his earned credits in a situation where he is not entitled to immediate release; but we are also aware many things can occur between the time credits are earned, when they are taken away, and when release is imminent. As discussed above, the inmate has the writ of mandamus to force prison officials to provide him with constitutional procedural due process, including proper notice and a hearing before revoking credits after they have been previously earned. *Waldon,* 861 P.2d at 313. This remedy ensures a timely record is made of the granting and revoking of earned credits. The inmate also has a complaint at such time as he or she is entitled to immediate release; and this Court has held the writ of habeas corpus is appropriate in that instance. *See Id.; Ekstrand,* 791 P.2d at 95. Thus, the inmate does have a state remedy at the appropriate time, *i.e.,* when he is eligible for release. The question then becomes a matter of timing for the inmate's access to the state remedy.

But before that time, this Court finds no statutory authority to render an opinion which has no effect on an inmate's judgment and sentence. Such a ruling is prohibited, as it would be advisory only, as we have previously discussed in *Matter of L.N.,* 617 P.2d 239, 240 (Okl.Cr.1980) ("An advisory opinion does not fall within the Court's original or statutory jurisdiction; neither does it come within its appellate review.") and *Opinion of the Judges,* 87 Okl.Cr. 297, 306–07, 197 P.2d 629, 634 (Okl.Cr.1948) (citing 22 O.S. §§ 1002, 1003, Court observes it has statutory authority to issue advisory opinions to the governor in cases in which the death sentence has been imposed and an appeal has not been taken.)

■■■ In summary, we simply refuse to believe the Legislature intended this Court or any district court of this State to become involved in the earned credits business, and we decline to do so absent a specific statutory provision to the contrary.[7]

---

FEDERAL CERTIFIED QUESTION: Frank H. Seay, District Judge for the United States District Court for the Eastern District of Oklahoma, has certified a Question of Law pursuant to the Oklahoma Uniform Certification of Questions of Law Act, 20 O.S.1991, §§ 1601–1611, as follows:

"Is there a state mandamus remedy whereby inmates may challenge the administration of their sentences and allege the unconstitutional denial of earned credits they are entitled to receive; and if not, what is the proper state remedy for inmates to challenge the administration of their sentences (included earned and CAP

---

7. Nor do we deem 57 O.S.1991, § 564 to indicate anything to the contrary. That provision reads:

An inmate in the custody of the Department of Corrections shall exhaust all available administrative remedies prior to initiating an action in district court against the Department.

While it is tempting to hold this provision implicitly provides for a judicial remedy after all administrative remedies are exhausted, we cannot do so. We deem it significant the Legislature chose to place the exhaustion requirement in a statute addressing general provisions of Title 57, while at the same time failing to place such a provision in 22 O.S.1991, § 1051 *et seq.,* the chapter expressly dealing with appeals. Additionally, the Legislature seems to have explicitly and specifically placed the sole administrative remedy within the very section dealing with earned credits. It is a standard rule of statutory construction that a specific provision controls over a more general one. *Luster v. State,* 746 P.2d 1159, 1161 (Okl.Cr.1987); *State v. Woodward,* 737 P.2d 569, 570 (Okl.Cr.1987). This is what has occurred here.

credits), assuming they are not entitled to an immediate release?"

QUESTION ANSWERED. RELIEF IS AVAILABLE IN STATE COURTS, BUT NOT IN THE FORMAT SOUGHT BY PETITIONERS. SPECIFICALLY WE HOLD: (1) MANDAMUS PROVIDES A VEHICLE FOR INMATES TO ENSURE DUE PROCESS IS PROVIDED WITHIN THE DEPARTMENT OF CORRECTIONS DISCIPLINARY SYSTEM; (2) STATE LAW DOES NOT PROVIDE AN APPEAL FROM DEPARTMENT OF CORRECTIONS ACTIONS ON DISCIPLINE; (3) HABEAS CORPUS IS THE PLENARY REMEDY FOR AN INMATE TO ADJUDICATE A RIGHT TO RELEASE BASED ON THE AMOUNT OF TIME SERVED COUPLED WITH THE NET EARNED CREDITS AWARDED; AND (4) CONSEQUENTLY, A STATE REMEDY IS AFFORDED, BUT NOT AT THE TIME THE PETITIONERS SEEK TO PREMATURELY LITIGATE THE ISSUE.

JOHNSON, V.P.J., and LANE, CHAPEL and STRUBHAR, JJ., concur.