2006 OK CR 41

Anthony Harold WARNICK, Petitioner,

v.

Glynn BOOHER, Warden, Respondent.

No. CQ–2006–566.

Court of Criminal Appeals of Oklahoma.

Sept. 29, 2006.

*OPINION ANSWERING CERTIFIED*
*QUESTION OF LAW*

LUMPKIN, Vice–Presiding Judge.

¶1 The Honorable Terence Kern, United States District Judge for the Northern District of Oklahoma, has certified the following question pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S.2001, § 1601–1611:

Whether Oklahoma law—constitution, statutes, regulations, and case law—provides an Oklahoma prisoner with an expectation of finality with respect to a sentence such that a correction to the period of confinement cannot be made after the sentence has been discharged but while the prisoner is still confined on a consecutive sentence?

¶2 The following relevant facts were provided by the certifying court:

¶3 Petitioner is currently serving sentences entered on convictions for lewd molestation. He first served a six (6) year sentence resulting from the revocation of probation of a ten (10) year sentence entered in 1988. He is now serving two concurrent twenty (20) year sentences entered in 1996. The twenty (20) year sentences were ordered to be served consecutively to the six (6) year sentence. His "rebill date"—the date on which his first sentence (the six year sentence) ended and his twenty (20) year concurrent sentences began was originally June 28, 1998.

¶4 On July 25, 2000, a Department of Corrections (DOC) sentencing audit revealed Petitioner had been awarded earned credits to which he was not entitled. To correct the error, the date the 20–year concurrent sentences were to begin, or the "rebill" date, was changed from June 28 to August 18, 1998. Petitioner challenged the correction to his record through the available prison grievance process but was denied relief. Petitioner then filed for federal habeas corpus relief in the United States District Court for the Eastern District of Oklahoma challenging the administration of his sentence by DOC. The case was transferred to the United States District Court for the Northern District of

Oklahoma, the district within which Petitioner had been convicted.

¶5 During the pendency of his federal habeas corpus proceeding, Petitioner's sentences were again audited in May 2002, after this Court determined the mandatory participation in the sex-offender treatment program was unconstitutional. As a result of the sentence audit, Petitioner received a net adjustment of 968 credits on his 20 year sentences. The audit also determined that in April 1998, while Petitioner was still serving his six year sentence, a calculation error resulted in the subtraction of 106 credits rather than only 53 credits. To correct both the sex-offender treatment program error and the calculation error, Petitioner received 155 credits offset by 53 credits, or 102 credits on his six year sentence. The "rebill" date was changed from August 18, 1998 to July 15, 1998.

¶6 The United States District Court for the Northern District initially denied habeas relief by Order filed November 15, 2002. Petitioner appealed to the Tenth Circuit Court of Appeals. On September 22, 2005, the Tenth Circuit Court of Appeals remanded the case back to the United States District Court for the Northern District for further proceedings on Petitioner's claim that the 53 credit offset on his six year sentence violated double jeopardy principles because it took place after he had fully served that sentence. The United States District Court for the Northern District has now certified the above question of law to this Court.

**AUTHORITY TO ANSWER**

 ¶7 Oklahoma adopted the Uniform Certified Question of Law Act in July of 1973. 20 O.S.2001, § 1601. Pursuant to the Act, this Court

> may answer a question of law certified to it by a court of the United States ... if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or the Court of Criminal Appeals, constitutional provision, or statute of this state.

20 O.S.2001, § 1602; *see Canady v. Reynolds,* 1994 OK CR 54, ¶8, 880 P.2d 391, 393–394. "This Court has the power to give the

present state of the law as well as use the opportunity to create new precedents" when answering a certified question of law. *Moore v. Gibson,* 2001 OK CR 8, ¶6, 27 P.3d 483, 485; *Canady,* 1994 OK CR 54, ¶12, 880 P.2d at 394–395. In so doing, we may reformulate or reinterpret a question of law certified to this Court. *Id.*

## *DISCUSSION*

### I.

¶8 The double jeopardy clause of the United States Constitution states in part that, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Oklahoma state constitution states in part that "nor shall any person be twice put in jeopardy of life or liberty for the same offense." Okla. Const. art. II, § 21. This Court has held the state constitutional prohibition against double jeopardy is coextensive with that of the federal constitution. *Edwards v. State,* 1991 OK CR 71, ¶7, 815 P.2d 670, 672.

¶9 In *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), the United States Supreme Court held that under the double jeopardy clause, the history of sentencing practices, and the pertinent rulings of the Court, a criminal sentence, once pronounced, is not to be accorded constitutional finality and conclusiveness similar to that which attaches to a jury's verdict of acquittal. 449 U.S. at 132, 101 S.Ct at 435. In remanding Petitioner's case to the United States District Court for the Northern District, the Tenth Circuit Court of Appeals discussed *DiFrancesco* stating in part:

> The Court identified one necessary condition for a violation of the Clause on this ground—namely, that the adjustment violate a legitimate expectation of the defendant in the finality of his sentence. Acquittal, as a matter of constitutional law, gives a defendant a legitimate expectation of finality of his (lack of a) sentence. But the Court observed that "the pronouncement of sentence has never carried the finality that attaches to an acquittal," and held that "[t]he Double Jeopardy Clause

does not provide [a] defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." Nonetheless, although constitutional law did not create a legitimate expectation of finality, one might have been created by nonconstitutional law. In *DiFrancesco*, however, this was clearly not the case because the adjustment was authorized by the statutory appeal provision at issue. Because neither constitutional nor nonconstitutional law gave the defendant a legitimate expectation that his sentence was final when pronounced and could not be corrected on appeal, the government did not violate the Double Jeopardy Clause.

*Warnick v. Booher*, 425 F.3d 842, 847–48 (10th Cir.2005) (internal citations omitted).

## II.

■ ¶ 10 In the State of Oklahoma, the legislative branch of government is vested with the power of enacting all laws. Okla. Const. art. V, § 1. Once the Legislature has acted and adopted a proposed measure as law, it will be presumed a valid enactment. *Fields v. Driesel*, 1997 OK CR 33, ¶ 20, 941 P.2d 1000, 1005. In Title 57 of the Oklahoma Statutes, entitled Prisons and Reformatories, the Legislature has set forth procedures for the execution of a sentence of imprisonment ordered by a district court. Essentially, once a sentence of imprisonment is pronounced, a defendant is to be transported to the Department of Corrections Lexington Assessment and Reception Center or other designated location, together with a certified copy of the judgment and sentence from the district court ordering imprisonment. 57 O.S.Supp.2006, § 95. *See also* 22 O.S.Supp. 2004, § 980. Except as otherwise provided by law,[1] every inmate of a state correctional institution shall have their term of imprisonment reduced monthly, based upon the accrual of specifically designated credits. 57 O.S.Supp.2005, § 138(A). These credits include "earned credits" which may be subtracted from the total credits accumulated by

an inmate, upon recommendation of the institution's disciplinary committee, following due process, and upon approval of the warden or superintendent. *Id.* Earned credits lost or removed subject to misconduct, nonperformance or disciplinary action may be restored as provided by DOC policy. 57 O.S.Supp. 2005, § 138(C).

¶ 11 When a criminal defendant is convicted of two or more crimes in the same proceeding or court or in different proceedings or courts, the sentences are to be served consecutively unless specifically ordered by the district court to be served concurrently. 22 O.S.2001, § 976. In a case with multiple sentences, the judgment and sentence which is first received at the penal institution shall commence and be followed by those sentences which are subsequently received at the institution, in the order in which they are received by the institution, unless a judgment and sentence provides that it is to run concurrently with another judgment and sentence. 21 O.S.2001, § 61.1. This provision shall not affect the credits allowed under Section 138 of Title 57. *Id.*

¶ 12 The Oklahoma Legislature has granted to the Department of Corrections the sole and exclusive power to operate the state prisons. 57 O.S.2001, § 501 et seq. (the Oklahoma Corrections Act of 1967). The Legislature has also set out the purposes and policies of the criminal justice and corrections systems in Oklahoma. 22 O.S.2001, § 1514. The Legislature has provided in part that "[i]t is the goal of [DOC] to provide adequate prison space to ensure that those sentenced to prison will remain incarcerated until such time as they can be safely released, or until their active sentences are completed." 22 O.S.2001, § 1514(6). Also, "[i]t is the mission of [DOC] ... to keep accurate records." *Id.* Further, as an inmate demonstrates that he is no longer a threat to society, that the punishment has been effective and that a program of rehabilitation is showing progress, the inmate's level of custody may be commensurately reduced in an

---

**1.** This includes the actual serving of the sentence which ultimately reduces the term of imprison-

ment.

orderly progression through custody levels to parole and release from supervision. *Id.*

▪ ¶ 13 These statutory provisions show that the Legislature has invested DOC with the authority to ensure a sentence of imprisonment is carried out as ordered by the district court. The only expectation of finality in the sentence is that an inmate will not have to serve more time than the full sentence imposed. While the sentence is not discharged until it is served as ordered by the district court, exactly when the prison sentence is discharged based upon adjustments to a prisoner's sentence due to the accumulation or reduction of credits is an administrative procedure within the authority of DOC. Due to the ongoing accumulation and/or reduction of credits throughout an inmate's period of incarceration, there is no expectation of finality in the sentence or that the prison sentence will be discharged short of the term set forth in the formal judgment and sentence.

### III.

▪ ¶ 14 The above conclusion is supported by this Court's case law. In *In Re Keith,* 1971 OK CR 111, 482 P.2d 942, this Court held that a prisoner's sentence is not satisfied until he serves the entire sentence and that is accomplished "when a prisoner has served a sufficient number of days to complete his sentence, including good time credit computed under Title 57 O.S. § 138, he is to be released with a full and unconditional discharge as having satisfied the judgement and sentence." 1971 OK CR 111, at ¶ 11, 482 P.2d at 944. "Where the penalty is imprisonment, the sentence may be satisfied only by the actual suffering of the imprisonment imposed, unless remitted by death or some legal authority." *Application of Richardson,* 1959 OK CR 118, ¶ 9, 346 P.2d 954, 956. *See also Wingfield v. Page,* 1966 OK CR 147, ¶ 16, 419 P.2d 564, 567.

¶ 15 While this Court has not previously addressed the exact question posed in this case, we have rejected requests to approve the discharge of a sentence short of its actual completion.[2] In *Application of Richardson,* the defendant was initially incarcerated on November 11, 1954, to serve a five-year sentence from Craig County. In 1956, prior to completing that sentence, the defendant escaped. While an escapee, he got into further trouble and was convicted in Ottawa County and sentenced to two terms of four years in prison, the sentences to run concurrently. Each judgment and sentence provided that such sentences should begin from the 19th day of December, 1956. Also, while an escapee, the defendant was convicted of committing a crime in Pittsburg County and sentenced to four years imprisonment in the state penitentiary.

¶ 16 When the defendant was eventually returned to prison, the penitentiary authorities cancelled the credits that he had earned towards a reduction in time to be served on his original sentence from Craig County, and "rebilled" him to complete that sentence, and the records were marked to show that he should be held to serve the two concurrent sentences from Ottawa County upon completion of the Craig County sentence. The time of serving to commence upon completion of serving the original Craig County sentence, rather than December 19, 1956, as stated in the two judgments and sentences. The record was further marked to show that defendant was to be held to serve the Pittsburg County sentence after completion of the Craig and Ottawa County sentences.

¶ 17 In July 1958 the defendant was discharged on the Craig County case, but was "rebilled" on the two Ottawa County convictions, running concurrently. Those two sentences were scheduled to be completed on September 20, 1960, at the time of the defendant's appeal to this Court. The defendant was scheduled to thereafter commence serving the Pittsburg County sentence.

¶ 18 On appeal, the defendant argued that regardless of the Craig County sentence that

---

**2.** In an unpublished order in case no. MA–99–178, *Lewis v. Littlejohn, et al.,* (March 9, 1999) this Court found an inmate failed to show a right to "be awarded Earned Credits which were mistakenly awarded to him as a result of a clerical error" after the District Court had "determined Petitioner was not entitled to be released simply because the DOC made a mistake in its record-keeping."

he was serving when he escaped, that by reason of the provisions in the two Ottawa County judgments it was mandatory that his sentences from that court begin running from December 19, 1956, and that the Warden of the Penitentiary should have billed him in to serve such sentences at that time. The effect of such argument meant that the Craig County sentence would either run concurrently, or he would have to be "rebilled" for completion of the Craig County sentence after serving the two Ottawa County sentences. In rejecting the defendant's argument, this Court held:

> In the within case, therefore, it was the duty of the Warden to see that petitioner completed his Craig County sentence before he commenced subsequent sentences in order of precedence. Petitioner by his own misconduct made it impossible for his Ottawa County sentences to commence on December 19, 1956, because his Craig County sentence that had already taken precedence over any subsequent sentences, had not been served.
>
> . . .
>
> But even if the Warden had billed petitioner in on the two Ottawa County cases and required him to serve them, prisoner would have been required to complete serving the Craig County sentence thereafter, and then commence serving the Pittsburg County sentence. Whichever way he was billed in, petitioner could not escape serving the sentences from Craig, Ottawa and Pittsburg Counties.

1959 OK CR 118, at ¶¶ 10–12, 346 P.2d at 956–957.

¶ 19 Citing to *Ex parte Edwards*, 88 Okl. Cr. 433, 204 P.2d 547, the *Richardson* court said, " '[t]ime fixed for execution of sentence or commencement of execution thereof is not essential element of sentence, and where penalty is imprisonment, sentence may be satisfied only by suffering of actual imprisonment imposed.' 'Expiration of time without imprisonment is not execution of sentence to imprisonment.' " 1959 OK CR 118, at ¶ 14, 346 P.2d at 957.

¶ 20 In cases of multiple sentences, this Court has held that consecutive sentences are viewed as one incarceration term consisting of multiple sequential sentences. *See Kaemper v. Page*, 1969 OK CR 17, ¶ 4, 449 P.2d 732, 733. This holding is consistent with DOC policy.[3] DOC policy also reflects that a "consolidated record card" is created for each inmate, upon receipt of a judgment and sentence concurrent but resulting in a different release date, or upon "rebill". The creation of the consolidated record card is the only procedural action taken regarding the ending of one sentence and the beginning of the next. Further, audits will be performed in "rebill" situations, both of the closing case and the new case. Corrections of errors, in the inmate's favor or not, are performed when conducting an audit. When the error is found in connection with a "rebill" date, the date is adjusted accordingly. An inmate who has completed one sentence and "rebills" to the next consecutive sentence has not discharged and is not issued a "Certificate of Release". The calculations by DOC of when a defendant has earned credits sufficient to discharge a term of incarceration do not carry the same legal effect as commutation by the Governor or modification of the sentence by this Court on appeal. *See Hemphill v. State*, 1998 OK CR 7, ¶ 11, 954 P.2d 148, 151–152.

¶ 21 Therefore, under Oklahoma case law and DOC regulations, Petitioner's six-year sentence and concurrent twenty year sentences are considered one sentence with multiple parts for purposes of satisfying his court ordered punishment. Petitioner's sentence will not be discharged until all parts of it are completely served through the combination of accumulation of credits and actual days in prison. DOC audits of sentences occur at various times during the service of a sentence to ensure both the accuracy of the sentence and that an inmate does not serve more time than prescribed in his/her judgment and sentence. Any clerical error in DOC's recordkeeping regarding the accumulation and/or reduction of credits and the

---

**3.** Sworn affidavit of Jim Rabon, Administrator, Sentence Administration and Offender Records, Oklahoma Department of Corrections, attached as Exhibit 1 to Respondent's Response Pursuant to Court's (United States District Court of Northern District) Order.

completion date of the sentence is not grounds for release and does not create any expectation of finality short of serving the entirety of the actual sentence imposed.

### ANSWER

¶ 22 For the reasons set forth above, we answer the question submitted as follows: Under Oklahoma law, the pronouncement of the prison sentence in the judgment and sentence gives a criminal defendant a legitimate expectation of finality in the execution of that sentence only to the extent he will be required to serve the entirety of that sentence. Petitioner's six year sentence, and the two twenty year concurrent sentences, running consecutively to the six year sentence, are considered one sentence with multiple parts for purposes of satisfying his court ordered punishment. While Petitioner may have discharged the first portion of his sentence, he is still confined to DOC until his full sentence is completely discharged. Any errors in DOC recordkeeping are not grounds for early release and do not create an expectation of finality of the sentence.

CHAPEL, P.J., C. JOHNSON, A. JOHNSON, and LEWIS, JJ., concur.